James L. Hudgens (SBN 95143)
LAW OFFICE OF JAMES L. HUDGENS
15 West Carrillo Street, Suite 220
Santa Barbara, California 93101
Telephone (805) 564-7802
Facsimile (805) 962-0722

Attorneys for Plaintiff Raymond D. Chandler,
and all those similarly situated

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND D. CHANDLER, an individual, on his own behalf, and as class action representatives on behalf of all those similarly situated, and in the interest of the general public, | Case No.: _____ |
| | CLASS ACTION COMPLAINT FOR: |
| Plaintiff, | 1. RICO (18 U.S.C. § 1962 et seq) |
| v. | 2. ELECTRONIC FUNDS TRANSFER ACT (15 U.S.C. § 1693 et seq) |
| | 3. DECLARATORY RELIEF |
| CLARUS COMMERCE, LLC, a Connecticut Corporation, and DOES 1-50, Inclusive, | 4. CONVERSION |
| | 5. NEGLIGENCE |
| | 6. INVASION OF PRIVACY |
| Defendants. | 7. CAL. LEGAL REMEDIES ACT (Cal. Civil Code § 1770 et seq) |
| | 8. UNFAIR BUSINESS PRACTICE (Cal. Bus. & Prof § 17200 et seq) |
| | 9. INTENTIONAL MISREPRESENTATION |
| | (REQUEST FOR TRIAL BY JURY) |
| | *(Civil Cover Sheet Attached)* |

## INTRODUCTORY NOTE

1.      In 2013 Defendant Clarus Commerce LLC, then known as Clarus Marketing Group, LLC, settled a nationwide class action lawsuit brought in the U.S. District Court for the Southern District of California.  That lawsuit alleged nearly identical facts as this lawsuit. (See complaint in *Cox et al. v. Clarus Marketing Group, LLC et al.*, attached hereto as **Exhibit A**).  Based on the allegations made herein, including numerous examples of complaints made post-settlement of the Cox lawsuit by putative class members in this action, Defendant Clarus Commerce LLC did

1    not stop its challenged practices but continued those practices unabated right into 2017.

2    Attached hereto as **Exhibit B** are pages downloaded from *complaintsboard.com,* one of several

3    on-line consumer complaint websites. These complaints were made *after* the Cox settlement.

4    They were made against FreeShipping.com, a trademarked product of Clarus Commerce LLC

5    and its predecessor. FreeShipping.com is the same product through which Clarus Commerce

6    LLC performed the wrongful acts against Plaintiff and the Class members in this action.

7                      JURISDICTION AND VENUE

8    2.       This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. §

9    1693m(g) (EFTA), and 18 U.S.C. § 2510 *et seq.* (ECPA). This Court has supplemental

10    jurisdiction over state law claims under 28 U.S.C. § 1367.

11    3.       Defendant Clarus Commerce LLC, is registered to do business in the State of California

12    with the California Secretary as a foreign corporation under Entity No. 201525810317.

13    Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this action because this Court

14    has personal jurisdiction over the Defendants under 28 U.S.C. § 1391(c), and a substantial

15    amount of the events giving rise to the claim occurred in this District.

16                           THE PARTIES

17    4.       Plaintiff Raymond D. Chandler ("Chandler" or "Plaintiff") is an individual who at all

18    times mentioned herein resided, and continues to reside, in Santa Barbara County, California.

19    5.       Defendant Clarus Commerce, LLC ("Clarus"; f.k.a. Clarus Marketing Group, LLC) is a

20    Connecticut corporation with its principal place of business in Rocky Hill, Connecticut. Clarus

21    is an online marketing company. At all times relevant to this dispute, Clarus actively solicited

22    and engaged in business and commerce in this jurisdiction, and committed torts in this

23    jurisdiction the impacts of which were felt in this jurisdiction. Clarus engaged in such behavior

24    both directly and through its aiding and abetting of, and conspiracy with Doe Defendants in

25    committing the acts complained of herein.

26    6.       Plaintiff and the Class are ignorant about the true names of Defendants sued as DOES 1

27    through 50, inclusive, and their wrongful conduct, and therefore sue these Defendants by

28    fictitious names. Plaintiff and the Class will seek court leave to amend this complaint to allege

their true names and capacities when ascertained. Plaintiffs and the Class allege on information and belief that at all relevant times, DOES 1-50, inclusive, were agents, servants, employees, representatives, partners, and related or affiliated entities of Defendants, and in doing the things hereinafter mentioned, were acting in the course and scope of their agency, employment, or retention with defendants' permission, consent, authority and ratification.

7.      At all times relevant, Defendants aided and abetted, encouraged and rendered substantial assistance to each other in breaching their obligations to consumers, including Plaintiff and the Class members. For example, Doe Defendants aided and abetted and substantially assisted Clarus with obtaining consumers' Private Payment Information and charging their credit and debit account without authorization. Defendants were aware of their wrongdoing and that their conduct substantially assisted the other's wrongdoing.

8.      Defendants are and were acting as the agents, servants, employees, joint venturers, and representatives of, and with the knowledge, consent and permission of, and in conspiracy with each other and within the course, scope and authority of that agency, service, employment, representation, joint venture, and conspiracy ratified by each other. The Freeshipping.com program referenced herein was managed and implemented by Clarus. Thus, the actions, failures to act, and breaches alleged herein were approved, ratified, and done with the cooperation and knowledge of Defendants.

9.      Defendants conspired to profit from unauthorized charges to consumers' debit and credit accounts by using the "data pass" process": the process by which payment information provided to an initial merchant (such a credit card, debit card, bank account, or other financial account number, or other billing information that is used to charge a customer) is passed to a third party seller such as Clarus.

10.      Pursuant to this conspiracy, Defendants, their agents, servants, and employees, acting both jointly and severally, committed or caused to be committed a series of unlawful acts, namely: making, or causing to be made, unauthorized charges to consumers' credit and debit cards. These acts were made in furtherance of the steps involved in online shopping transactions.

1. By committing the acts alleged herein Defendants are jointly liable for the violations complained of herein. Through sleight of hand, Clarus obtained consumers' Private Payment Information from online shopping websites and extracted money from them via unauthorized charges to their credit and debit cards.

## PLAINTIFF CHANDLER'S EXPERIENCE WITH FREESHIPPING.COM

12. Chandler made a purchase on a Sears MasterCard from an internet shopping website (a.k.a. on-line retailer) in September, 2015. After inputting payment information, the shopping website generated an offer for free shipping. Chandler clicked on the free shipping offer.

13. There was no obvious indication that merely by providing payment information to the shopping website and email and/or other contact information that Chandler was agreeing to sign up for and/or join any program by which he would be charged a monthly fee.

14. Chandler was never told that he had been directed to a Clarus interface, nor was he informed of the truth about what was going to happen to his Private Payment Information — that by clicking on "free" shipping he was supposedly "authorizing" Clarus to charge his credit card.

15. Chandler assumed that he could not, and had not, authorized someone to charge his payment card merely by providing an email address and zip code. These are not signatures, marks of consent, or in any way associated with credit or debit billing. This is also not a known or accepted method to enter into or authorize a payment obligation. Because an email address and zip code cannot constitute lawful authorization for credit and debit card charges, Chandler had no obligation to locate and read the voluminous amount of small print on Clarus's webpage.

16. A few months ago, Chandler discovered unauthorized charges on his credit card statement from FreeShipping.com, a program owned and operated by Clarus. After closely examining his statements and investigating the matter, Chandler discovered that FreeShipping.com had been charging his credit card account from August, 2016, through February, 2017, at the monthly rate of $12.97; for a total charge to date of $246.42. Chandler was surprised to see the charges since he never intended to join any program or agreement and never authorized any on-line shopping website and/or FreeShipping.com or Clarus to utilize or share his Private Payment Information.

17. Chandler never received notice that he was enrolled in a membership program or

agreement of any kind nor did he receive a copy of the program, agreement or purported "authorization" for Clarus to charge his card cards. Chandler had difficulty detecting the monthly charges because the charges were small and from an unfamiliar vendor.

18.     Chandler's experience mirrors that of hundreds, if not thousands, of other consumers. In fact, the Internet is replete with consumer complaints about Clarus and its membership programs, which can be found on various consumer protection websites such as www.ripoffreport.com, and www.complaintsboard.com. (See Exhibit B).

## CLASS ALLEGATIONS

19.     **The Class.** This lawsuit is brought on behalf of an ascertainable nationwide Class consisting of:

> All persons residing in the United States who had their credit or debit card charged, or bank account debited, for fees associated with any membership program maintained by Clarus Commerce, LLC, or its predecessor, including FreeShipping.com., commencing at any time during the four years preceding the filing of this action. [1]

20.     **Excluded from Class and Subclasses:** Excluded from the Class are Defendants, their corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendants have a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, and Plaintiffs' attorneys. Also excluded from the Class and are any judges presiding over these proceedings and their immediate family.

21.     **Numerosity** The members are so numerous that joinder of all members is impracticable. While the exact numbers are unknown to Plaintiff at this time, Plaintiff is informed and believes and thereon alleges that the Class consists of hundreds if not thousands of individuals. Class members are readily ascertainable through appropriate discovery from records maintained by Defendants and their agents.

22.     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the

---

[1] Plaintiff is informed and believes and thereon alleges that Defendant operated other membership programs in addition to FreeShipping.com. Plaintiff will amend the Complaint when the names of those programs are revealed through the discovery process.

likelihood of individual Class members prosecuting separate claims is remote and individual members do not have a significant interest in individually controlling the prosecution of separate actions. No difficulty will be encountered in this case's management to preclude maintenance as a class action.

23.    **Common Questions of Law and Fact Predominate:** Questions of law and fact common to the Class predominate over questions affecting only individuals. Among the common questions arc:

      a.    whether Class members can lawfully authorize an online retailer to transfer their credit card or debit card information to Clarus merely by providing their email address and zip code on an interact form;

      b    whether Class members can lawfully authorize Clarus to bill their credit or debit cards merely by providing their email address and zip code;

      c.    whether Defendants' conduct violates the rules and terms of use established by credit card companies such as MasterCard. Visa. and American Express;

      d.    whether an email address and/or zip code on a web page constitutes a "written authorization" under the Electronic Funds Transfer Act ("EFTA");

      e.    whether Clarus provided Class members with a copy of their purported written authorization to begin charging their debit cards, as required by the EFTA;

      f.    whether Class members were enrolled in Clarus's membership programs;

      g.    whether Class members' billing information was obtained by Clarus without consent;

      h.    whether Clarus "intercepted" Class members' billing information;

      i.    whether Clarus charged Plaintiffs and the Class members' credit or debit cards without consent;

      j.    whether Defendants violated RICO;

      k.    whether Defendants engaged in conversion; whether Defendants obtained unjust

enrichment;

l.      whether Defendants violated privacy rights;

m.     whether Defendants engaged in negligence or unfair or unlawful business practices;

n.      whether Defendants' contracts, agreements, or policies contained unconscionable terms;

o.      whether Clarus violated the EFTA;

p.      whether Plaintiff and the Class arc entitled to restitution;

q.      whether Plaintiff and the Class arc entitled to declaratory/injunctive relief;

r.      whether Plaintiff and the Class sustained damages and, if so, the proper measure of those damages.

24.     **Typicality:** Plaintiff's claims are typical of other Class members' claims because they, like every other Class member, were exposed to virtually identical conduct.

25.     **Adequacy:** Plaintiff can fairly and adequately represent the Class' interests; he has no conflicts of interest with other Class members, and he retained counsel competent and experienced in class action and complex civil litigation.

## FIRST CLAIM
### Violations of RICO
### Brought by Plaintiff and the Class Against Clarus

26.     Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

27.     The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides that

It shall be unlawful for any persons employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c).

28.     Clarus is at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. § 1961(3) and § 1962(c), and employs or associates with an enterprise operated or

1  managed through a pattern of racketeering activity that injured Plaintiffs' and the Class members'

2  property.

3  <center>The Enterprise</center>

4  29.    Freeshipping.com, like all other membership programs allegedly operated by Clarus, is

5  an enterprise engaged in activities that affect every state within the United States. Alternatively,

6  Clarus and Freeshipping.com and Doe-Defendant(s) are an association-in-fact "enterprise,"

7  within the meaning of 18 U.S.C. § 1961(4), and engaged in activities that affect every state

8  within the United States.

9  30.    The enterprise's purpose is to profit from making unauthorized charges to consumers'

10  credit and debit cards under the guise that consumers authorized their enrollment in

11  Freeshipping.com, a program with monthly fees. Clarus's role in the enterprise is (a) to create,

12  implement, and operate Freeshipping.com (b) to promote Freeshipping.com on various on-line

13  shopping websites; (c) to re-direct consumers to provide innocuous information such as an email

14  address and zip code to create a pretext to charge their debit and credit cards; (d) to obtain

15  consumers' Private Payment Information either directly or via the data pass method; (e) to

16  communicate to financial institutions or payment centers that Freeshipping.com obtained

17  authorization to charge consumers' credit and debit accounts; and (d) to obtain and/or share the

18  profits from the unauthorized charges with one or more Doe Defendants.

19  31.    The enterprise has remained in existence long enough for Clarus to pursue and

20  accomplish the enterprise's purpose: to profit from unauthorized charges to consumers' credit and

21  debit cards.

22  <center>Management of the Enterprise</center>

23  32.    Clarus operates and manages the enterprise.

24  <center>The Pattern</center>

25  33.    Clarus engages in a pattern of unlawful activity because, among other things, (a) Clarus's

26  purpose is to defraud consumers by charging their credit and debit cards, without proper

27  authorization, under the guise that consumers enrolled in the Freeshipping.com membership

28  program; (b) Clarus deceptively obtains consumers' Private Payment Information via data pass;

<center>CLASS ACTION COMPLAINT</center>
<center>8</center>

(c) Clarus communicates to financial institutions that Freeshipping.com has authority to charge consumers' credit and debit cards; (d) Clarus obtains and/or shares its profits from the unauthorized charges with one or more Doe Defendants; (e) consumers suffer unauthorized charges to their credit and debit cards; (f) the victims are always online shoppers; (g) Clarus always uses the same and/or a similar type of offer to entice consumers to provide innocuous information, like their email address and zip code, and then use the provision of that information as a pretext to charges to credit and debit cards; and (h) Clarus continues to charge consumer's credit and debit cards using Private Payment Information. Clarus engaged in those activities for at least a four-year period and will continue to charge consumers' credit and debit cards using information indefinitely.

<div align="center">Racketeering Activity</div>

34.     Clarus engaged in racketeering activity via mail and wire fraud within the meaning of 18 U.S.C. §§ 1341, 1343, by using the internet and U.S. mail to advance its scheme to profit from unauthorized charges to consumers' credit and debit cards. Clarus used the internet and U.S. mail to misrepresent to consumers the true nature of the free shipping offer and to misrepresent to financial institutions that Freeshipping.com was authorized to charge consumers' credit and debit cards.

35.     Clarus further engaged in racketeering activity via financial institution fraud within the meaning of 18 U.S.C. § 1344, by knowingly executing a scheme to obtain moneys from consumers' bank accounts misrepresenting by omission to financial institutions that it had obtained authorization to charge consumers' credit and debit cards and by using Private Payment Information obtained under the pretext that consumers knowingly agreed to join and pay monthly fees for Freeshipping.com.

36.     Plaintiffs and the Class members were injured from the unauthorized charges to their credit and debit cards, and thus suffered damages, including lost interest and use of their money. Plaintiffs and the Class are entitled to treble damages and attorneys' fees and costs under 18 U.S.C. § 1964(c).

**SECOND CLAIM**
**Violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq***
**Brought by Plaintiff and the Class Against Clarus**

37.     Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

38.     The Electronic Funds Transfer Act or EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. § 1693. The primary objective of the EFTA "is the provision of individual consumer rights." *Id.*

39.     Debit Card class members each maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15 U.S.C. § 1693a(5).

40.     Clarus engaged in "unauthorized electronic funds transfers," as that term is defined in 15 U.S.C. § 1693a(11), by debiting the bank accounts of Class members without express authorization.

41.     The EFTA provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and copy of such authorization shall be provided to the consumer when made." (15 U.S.C. § 1693e(a)). "In case of preauthorized transfers from a consumer's account to the same person which may vary in amount...the designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with the regulations of the Board, of the amount to be transferred and the scheduled date of the transfer." (15 U.S.C. § 1693e(b)).

42.     The EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 *et seq.*, provide: "Preauthorization electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.1(d). According to the Official Staff Interpretations ("OSI") of Regulation E, the EFTA's requirement that electronic fund transfers "be authorized by the consumer only in writing' cannot be met by a payee's signing a written authorization on the consumer's behalf with only an oral authorization from the consumer." Regulation E, Supp. I, Part 10(b), 'II 3. When "a third-party

payee fails to obtain the authorization in writing or fails to give a copy to the consumer it is the third-party payee that is in violation of the regulation." *Id.* at ¶ 2.

43.    Clarus violated the EFTA because it initiated electronic fund transfers from Class members' accounts without obtaining prior written authorization. Neither an email address nor a zip code constitutes a "written authorization" or a "writing signed or similarly authenticated" for purposes of the EFTA.

44.    Clarus also violated the EFTA because it initiated electronic fund transfers from Class members' accounts without providing copies of their written authorizations or reasonable advance notice of the amount to be transferred and the scheduled date of the transfer. On information and belief, Clarus does not even obtain or keep a copy of the completed forms bearing Class members' supposed written authorizations. And Clarus certainly did not provide these Class members with copies of these completed forms.

45.    Under 15 U.S.C. § 1693m, on behalf of Class member's whose debit cards were charged as described above, Plaintiffs seeks statutory damages, costs of suit, including reasonable attorneys' fees, and such other further relief as the Court deems appropriate.[2]

### THIRD CLAIM
**Declaratory Relief**
**Brought by Plaintiff and the Class Against Clarus**

46.    Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

47.    According to Defendants, Plaintiff and the Class members are parties to a putative contract with Clarus, the object of which is to allow Clarus to charge Plaintiffs' and the Class members' debit and credit accounts using Private Payment Information under the premise that Plaintiffs and the Class members enrolled in a program such as FreeShipping.com. The putative contract allows Clarus to circumvent its obligation to assure that consumers are knowingly, willingly, and affirmatively agreeing to join a membership program, pay monthly service fees,

---

[2] Chandler paid by credit card, not debit card. However, class representative claims are typical if they arise from the same alleged course of events. (*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1064 (C.D. Cal. 2010).

and have their credit or debit cards charged.

48.     The putative contract was never formed because there was no meeting of the minds between the parties. Even if a contract was formed, which it was not: it is unconscionable, misleading, confusing and one-sided.

49.     Consumers do not receive meaningful benefits in exchange for being enrolled in a membership program and charged monthly fees. Consumers are told that they will receive free shipping benefits, yet to the extent that any terms regarding charges to their accounts were presented, such terms were hidden and disguised on prolix forms. Consumers essentially are not given any meaningful choice as to whether to enroll, as evidenced by the fact that they unknowingly enrolled in the program.  Further, the putative contract violates credit card companies' policies and procedures against using the data pass method.

50.     Plaintiff seeks a declaratory judgment that any alleged contract is void on the ground that it is unconscionable because, in part, the contract purports to allow Clarus to enroll consumers in programs and then charge consumers' debit and credit accounts for monthly fees using Private Payment Information without obtaining express authorization.

51.     To the extent that an actual and present controversy exists between the parties because Clarus continues to use the putative contracts as a means to continue to make unauthorized charges to consumers' credit and debit accounts, Plaintiff and the Class seek both a declaration that these putative contract terms are unconscionable, illegal, and void, and restitution under 28 U.S.C. §§ 2201 and 2202 and all other applicable statutes.

## FOURTH CLAIM
### Conversion
### Brought by Plaintiff and the Class Against Defendants

52.     Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

53.     Plaintiff and the Class members had a right to retain the moneys taken from their credit and debit card accounts when they were secretly enrolled in Clarus's FreeShipping.com without authorization. Plaintiff and the Class members also have a right of ownership and possession of

their private, personally identifying information including their credit card, debit card and all other billing information. Plaintiff and the Class members further have a right of ownership and possession of their private computer systems.

54.     Clarus unlawfully converted Plaintiff's and the Class members' funds, personally identifying information (including but not limited to their billing information) through its deceptive practices which surreptitiously enrolled Plaintiff and the Class members into its fee-pay programs without their authorization.

55.     Clarus explicitly or implicitly made false representations and statements of existing facts with the intent to deceive Plaintiffs and the Class members by concealing or omitting the following material facts: (a) while completing a transaction with an online shopping website (online retailer), Clarus gained access to Plaintiff's and the Class members' confidential billing information by means of a deceptive offer that was made to Plaintiff and the Class members; (b) Clarus would automatically charge Plaintiff and the Class members a monthly fee for Clarus's FreeShiping.com and other programs, and (c) Clarus and one or more Doe Defendants profit from Plaintiff's and the Class members' deceptive enrollment in Clarus's programs.

56.     As a result of conversion by Defendants, Plaintiff and the Class members were damaged because, among other things, their credit and debit card accounts were charged unauthorized fees approximating $12-13 per month and their personal identifying information (including but not limited to their billing information) was obtained without their consent.

57.     Defendants' silence and omissions as to the material facts outlined above were material insofar as their silence and omissions caused Plaintiff and the Class members, without their knowledge, to become secretly enrolled in Clarus's fee-pay FreeShipping.com and other similar programs without authorization.

58.     Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendants for damages arising from their misconduct, along with prejudgment interest, costs of suit and such other relief this Court deems proper. Because Defendants' actions and omissions were willful, wanton, malicious and oppressive, and were undertaken with the intent to defraud, Plaintiff further demand an award of exemplary and punitive damages.

## FIFTH CLAIM
### Negligence
### Brought by Plaintiff and the Class Against Defendants

59.     Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

60.     Doe Defendant-on line shopping websites owed a duty of care to Plaintiff and the Class members to reasonably protect their Private Payment Information, and to adequately inform them of the use of that information for purposes other than the one for which they were visiting the websites. And Clarus owed a duty of care and honesty to Plaintiff and the Class members to ensure that it was not obtaining and using their Private Payment Information under misleading circumstances.

61.     Defendants assisted each other in breaching their respective duties. Among other things, Doe Defendant-on line shopping websites negligently shared Plaintiff's and the Class members' Private Payment Information with Clarus without informed authorization. And Clarus negligently obtained (either directly or via on line shopping websites) and charged Plaintiff's and the Class members' credit and debit cards without proper authorization and in violation of ROSCA and credit card company policies and procedures against using the data pass process.

62.     Defendants negligently utilized webpages and advertising that Defendants knew or reasonably should have known, were confusing and misleading in format and substance.

63.     Defendants also knew, or reasonably should have known, that Plaintiff and the Class members did not want their Private Payment Information passed to Clarus; that they did not want to enroll in Clarus's fee-pay programs; and that they did not want Clarus to charge their credit and debit cards.

64.     But for Defendants' negligence, Plaintiff and the Class members would not have unauthorized charges on their credit and debit card bills, for a service that was never requested, used, or provided.

65.     Clarus had no lawful or legitimate basis to access and charge Plaintiff's and the Class members' credit and debit cards for fees associated with its membership programs, like FreeShipping.com.

66.     Clarus received, and continue to receive, substantial fees from charging Plaintiff's and the Class members' credit and debit card accounts.  Doe-Defendants received, and continue to receive, substantial fees from Clarus's charging of Plaintiff's and the Class members' credit and debit card accounts.

67.     Plaintiffs and the Class members have been damaged by Defendants' negligent conduct in an amount to be proven at trial.

### SIXTH CLAIM
**Invasion of Privacy**
**Brought by Plaintiff and the Class Against Defendants**

68.     Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

69.     Plaintiff and the Class have constitutionally protected privacy interests in their Private Payment Information and their ability to control the disclosure and dissemination of this information.

70.     One who intentionally obtains unwanted access to another's private data is liable for invasion of privacy in tort. *Taus v. Loftus*, 40 Cal.4th 683, 725. 54 Cal. Rptr. 3d 775, 807-08 (2007). The Supreme Court of California instructs that the tort of intrusion is not limited to physical invasions, but also lies where the defendant "obtained unwanted access to data about the plaintiff." *Taus*, 40 Cal.4th at 725, 54 Cal. Rptr. 3d at 807-08 (2007) (quoting *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200 (1998).

71.     Plaintiff and the Class members did not know that their Private Payment Information would be provided to Clarus, and, instead, believed that the on-line shopping websites would only use their Private Payment Information to process their purchase from a those website.

72.     Plaintiff and the Class had reasonable expectations that their Private Payment Information would remain private from Clarus when they entered into credit or debit card transactions with on-line shopping websites. They were certainly not aware that such websites would disclose to Clarus, or allow Clarus to obtain, this information. The on-line shopping websites did not disclose intentions to provide Plaintiff's and the Class members' Private Payment Information to Clarus.

73.     Plaintiffs and the Class had reasonable expectations that Clarus - albeit an unknown entity to them at the time — would not obtain their Private Payment Information from on-line shopping websites and use it without ensuring that it had express consent to do so. They were certainly not aware that on-line shopping websites would disclose to Clarus, or allow Clarus to obtain, this information without consent. Neither Clarus nor the on-line shopping websites disclosed its true intention in a meaningful manner that would give Plaintiffs and the Class members' sufficient awareness about how their Private Payment Information would be handled.

74.     Defendants did not obtain Plaintiff's or the Class' Private Payment Information from a public source. Defendants realize that customers seek to maintain their privacy rights in their Private Payment Information.

75.     On-line shopping websites relied on the fact that Plaintiff and the Class did not know it would disclose their Private Payment Information to Clarus, and, instead, believed that on-line shopping websites would only use their Private Payment Information to process their purchase.

76.     Defendants' actions constitute a "serious" invasion of privacy resulting in Plaintiff and the Class being charged millions of dollars in unauthorized charges and having their Private Payment Information disclosed to or obtained by Clarus without their authorization or consent.

77.     Defendants' conduct is highly offensive to a reasonable person, as evidenced by the hundreds, if not thousands, of consumer complaints regarding Defendants' practices.

78.     As a proximate result of Defendants' above acts, Plaintiff's and the Class members' Private Payment Information was compromised and was obtained and used by Clarus for profit without their knowledge or consent, and all to the general damage in an amount according to proof.

79.     Defendants are guilty of oppression, fraud, or malice by using Private Payment Information with a willful and conscious disregard of Plaintiff's and the Class members' privacy rights.

80.     Plaintiff and the Class seek judgment for actual and punitive damages, plus attorneys' fees for the establishment of a common fund, interest, and costs. They also seek injunctive relief. Unless and until enjoined, and restrained by court order, Defendants will continue to cause

Plaintiff, the Class, and the public great and irreparable injury in that Private Payment Information will be disclosed and used for profit and that Clarus will make unauthorized charges to the credit and debit card accounts. Plaintiff, the Class, and the general public have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy.

### SEVENTH CLAIM
#### California Consumers Legal Remedies Act
#### Brought by Plaintiff and the Class Against All Defendants

81.  Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

82.  At all times relevant herein, Plaintiffs were "consumers" within the meaning of California Civil Code § 1761(d). Defendants violated Civil Code § 1770(a)(2) by misrepresenting the source of the free shipping offer.

83.  Defendants violated Civil Code § 1770(a)(3) by misrepresenting their association with each other.

84.  Defendants violated Civil Code § 1770(a)(5) by misrepresenting that consumers would receive free shipping benefits when, in fact, they had to pay for those benefits.

85.  Defendants violated Civil Code § 1770(a)(9) by advertising free shipping benefits with the intent to make unauthorized charges to consumers' credit and debit cards.

86.  Defendants violated Civil Code § 1770(a)(13) by making or assisting each other in making false or misleading statements about the free shipping offer or other discount offers.

87.  Defendants violated Civil Code § 1 770(a)(14) by representing or assisting each other in representing that the transaction would confer rights and remedies, which the transaction did not have, including offering free shipping benefits.

88.  Defendants violated Civil Code § 1770(a)(17) by representing that consumers would receive free shipping benefits when the earning of the free shipping benefit, if any, was contingent on enrolling in a membership program and paying monthly fees.

89.  Defendants violated California Civil Code§ 1770(a)(19) by inserting unconscionable provisions in purported electronic contracts that seek to bind consumers to terms to which they

1  did not agree.

2  90.    Plaintiff and the Class suffered harm because they incurred charges and/or paid monies in

3  monthly membership fees associated with the "Free Shipping" offers.

4  91.    Thus, Plaintiff and the Class currently seek injunctive relief against Defendants.

5  92.    Prior to or contemporaneous with the filing of this Complaint, Plaintiff will send a CLRA

6  notice letter to Defendant Clarus in compliance with California Civil Code § 1782(a).  Not less

7  than 30 days after the filing of this Complaint, and depending on Clarus's response to the letter,

8  Plaintiffs will amend the Complaint to add a prayer for damages.

9  ### EIGHTH CLAIM

10  **Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq
Brought by Plaintiff and the Class Against Defendants**

11  93.    Plaintiff refers to and incorporates by reference the above paragraphs as though set forth

12  fully herein.

13  94.    Because consumer complaints have been so pervasive. in 2010 the U.S. Congress passed

14  the Restore Online Shoppers' Confidence Act ("ROSCA"), codified at 15 U.S.C. §8402.

15  95.    ROSCA bans the "data pass" process by prohibiting "an initial merchant" from disclosing

16  a credit card, debit card, bank account, or other financial account number, or other billing

17  information that is used to charge a customer. to any post-transaction third party seller for use in

18  an Internet-based sale of any goods or services. (15 U.S.C. §8402(b)).

19  96.    ROSCA also requires post transaction third party sellers to fully disclose the goods and

20  services being offered and their costs. and severely restricts use of the "negative option" feature.

21  (15 U.S.C. §8402(a)(1)).    Most significantly. before post transaction third party sellers can

22  charge consumers' debit and credit cards. ROSCA requires them to receive express informed

23  consent.  (15 U.S.C. §8402(a)(2)).    Post transaction third-party sellers are required to obtain

24  from consumers their full account number, name, addresses, and contact information. They also

25  must require consumers to perform an additional affirmative action that shows consent. (15

26  U.S.C. §8402(a)(2)(b)).

27  97.    On-line shopping websites are initial merchants as defined under ROSCA because they

28  obtained Plaintiff's and the Class members' billing information directly from Plaintiff and the

1 | Class when they were in the process of purchasing merchandise from a these websites. (15
2 | U.S.C. §8402(d)(1)).

3 | 98.    Clarus is a post-transaction third party seller as defined under ROSCA because it sells
4 | access to memberships on the Internet, it solicits this service on the Internet through these
5 | website, after Plaintiff and the Class initiated a transaction on the websites. In such instances
6 | Clarus is not the initial merchant, or a subsidiary or corporate affiliate of the initial merchant or a
7 | successor of those entities. (15 U.S.C. §8402(d)(2)).

8 | 99.    Defendants' acts and practices are unlawful and unfair because, among other things,
9 | Clarus charges consumers' credit and debit cards without obtaining express informed consent as
10 | required under ROSCA. Instead it charges the cards using information obtained through the data
11 | pass process.

12 | 100.    Even without direct assistance from on-line shopping websites, Clarus engages in
13 | deceptive business practices as alleged above by obtaining Private Payment Information and then
14 | charging consumers' credit and debit cards without obtaining express informed consent

15 | 101.    Defendants continue to engage in these unlawful and unfair business practices and have
16 | been unjustly enriched.

17 | 102.    As a direct and proximate cause of Defendants' conduct, Plaintiff and the Class suffered
18 | unauthorized charges to their credit and debit cards.

19 | 103.    Plaintiff and the Class seek equitable relief because they have no other adequate remedy
20 | at law. Absent equitable relief, Defendants will continue to injure consumers, reap unjust
21 | enrichment, and harm the public's interest, thus engendering a multiplicity of judicial
22 | proceedings. Additionally, Plaintiff and the Class seek judgment against Defendants for
23 | preliminary and permanent injunctive relief, restitution, and/or proportional disgorgement of
24 | profits earned as a result of the conduct alleged herein, along with interest, attorneys' fees and
25 | costs under Cal. Code Civ. Proc. § 1021.5, the substantial benefit doctrine, the common fund
26 | doctrine or other authority requiring Defendants to pay attorneys' fees and litigation expenses.

27 | //

28 | //

## NINTH CLAIM
### Intentional Misrepresentation
### Brought by Plaintiff and the Class Against Defendants

104.    Plaintiff refers to and incorporates by reference the above paragraphs as though set forth fully herein.

105.    Each of the intentional misrepresentations/omissions was part of Defendants' continuous and ongoing act of charging Plaintiff's and the Class members' credit or debit cards without their consent, as alleged above.

106.    On or about August 2015 to the present, Clarus charged and collected money from Plaintiff's credit card based on the intentionally omitting to inform Plaintiff that merely by clicking on Free Shipping Plaintiff was agreeing, without fully informed consent, to join a program by which Plaintiff would incur such charges.    The same is true of the Class commencing four years before this complaint is filed.

107.    Had Plaintiff and the Class members been fully informed that merely by clicking on Free Shipping they were agreeing to join a program by which they would incur such charges, Plaintiff and the Class members would not have agreed to join.

108.    Clarus knew that by making the afore-mentioned omission Plaintiff and the Class members would rely on the omission to click on Free Shipping, yet made the omission nonetheless either intentionally or with reckless disregard for the truth.

109.    Plaintiff is informed and believes and thereon alleges that by making the aforesaid omission, Clarus intended to induce Plaintiff and the Class members to click on Free Shipping. In fact, Plaintiff and the Class members did rely on this omission when deciding whether or not to click on Free Shipping and were harmed by incurring monetary loss.

110.    Plaintiff's and the Class members' reliance on Clarus's omission was a substantial factor in causing Plaintiff and the Class members as alleged herein.

111.    As a direct and proximate result of Defendants' negligent omissions, Defendants have incurred liability to Plaintiff and the Class members. Defendants' actions and omissions were willful, wanton, malicious and oppressive, and were undertaken with the intent to defraud and in

conscious disregard for the rights of Plaintiff and the Class, and therefore Plaintiff and the Class are entitled to an award of exemplary and punitive damages.

### PRAYER FOR RELIEF

Plaintiff and the Class pray for judgment against Defendants as follows:

A.    An order certifying the Class and designating Plaintiff as the Class Representatives and Plaintiff's counsel as Class Counsel;

B.    The Court preliminarily and permanently enjoins Defendants from engaging in the conduct alleged herein;

C.    Other injunctive and declaratory relief as may be appropriate;

D.    Restitution and disgorgement of any ill-gotten profits from Defendants to the extent permitted by applicable law, together with interest thereon from the date of payment;

E.    For statutory damages according to proof;

F.    For general damages according to proof;

G.    For special damages according to proof;

H.    For exemplary or punitive damages;

I.    A declaration that Defendants arc financially responsible for notifying the Class about the pendency of this action;

J.    Reasonable costs and attorneys' fees;

K.    Statutory pre-judgment interest; and

L.    For such other relief as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, demand a jury trial for all claims triable.

Dated: March ___7___, 2017          THE LAW OFFICE OF JAMES L. HUDGENS

_____
James L. Hudgens